IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIM PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | 2011 CV 5682 |
| | ) | |
| v. | ) | Judge Andrea R. Wood |
| | ) | |
| EMC MORTGAGE CORPORATION and | ) | Magistrate Judge Jeffrey T. Gilbert |
| and JPMORGAN CHASE BANK, N. A. | ) | |
| | ) | **Jury Demanded** |
| Defendants. | ) | |

## MOTION FOR STATUS AND RULING

Plaintiff Kim Parker, through counsel, respectfully requests case status and ruling pursuant to Rule 12(Q) in the above captioned case. In support of her motion, Ms. Parker states as follows:

1. Plaintiff's motion for leave to file amended and supplemental pleading has been fully briefed as of March 20, 2014. Plaintiff's motion for additional discovery has also been fully briefed as of March 27, 2014 Plaintiff stands in need of a ruling on these motions because if the below described situation.

2. On August 28, 2013, plaintiff's property was damaged by a fire. Affidavit of Kim Parker, ¶ 12, hereinafter "KP Aff." (appended hereto as <u>Exhibit 1</u>). Soon thereafter, plaintiff filed a claim then received two checks from her insurance company totaling approximately $32,000 to be used for repairs to the property. *Id.* The checks are made out to her and defendants jointly. She still has the checks and has been unable to use them because the defendants refuse to release the funds for repair. *Id.*

1

3. Due to the fire damage, plaintiff and her tenants have had to vacate the property and reside elsewhere. KP Aff., ¶ 13. The City of Chicago requires vacant properties to be registered, but in order to register a vacant property, an owner has to show proof of insurance. *Id.* Plaintiff had fire insurance but it lapsed on December 13, 2013. *See* <u>Exhibit 1G</u> to KP Aff. Plaintiff has not been able to obtain or renew her homeowner's insurance policy because the property has not been repaired because Chase won't allow the funds to be used for repairs. *Id.* All these factors add to her financial damage and threaten to damage her still further.

4. For example, plaintiff has been unable to rent the properties to tenants due to the damage, and loses a combined monthly rental income of $1,425. KP Aff., ¶ 14. This loss of rental income causes her to fall further behind on her mortgage payments. *Id.* Next, plaintiff qualified for a new porch under the City of Chicago's Roof and Porch Repair Program (formerly EHAP), but was denied because she lacks homeowner's insurance. *Id.* at ¶ 15. She is unable to obtain insurance because the fire damage has not been repaired because Chase won't allow the funds to be used for repairs. *Id.* Further still, plaintiff was chosen in a lottery for Tax Increment Financing (TIF) grant, but subsequently denied funding because the fire damage had not yet been repaired on her property, and because defendants refused to release the mortgage status to the TIF program. *Id.* at ¶ 16. The TIF grant would have allowed her to repair the outside of her property; and a small portion of the grant could be used for indoor repairs. *Id.*

5. Plaintiff currently rents a separate apartment because she cannot occupy her own property due to the fire damage. *Id.* at ¶ 17. The rent is $800 a month. Plaintiff earns $1400 a month. *Id.* Her entire income is consumed by the $800 in rent, $200-300 for utilities to the property, and $200-300 for utilities at the rented unit. *Id.* Plaintiff relies solely on her $1400 income. *Id.* She no longer receives rental income from the property because her tenants vacated

due to the fire damage. *Id.* at ¶ 14. Plaintiff paid the City of Chicago a $750 vacancy fee, and has missed her second biannual payment because she could not afford it. *Id.* at ¶ 18. She is paying for utilities in two different places, and having a very difficult time making ends meet. *Id.* at ¶ 17. Further, because the property has not yet been repaired, plaintiff has been forced to incur subsequent damage to the property. *Id.* at ¶ 19. The property is boarded up but not sealed, and the back of the property is exposed. *Id.* Plaintiff had to replace the water pipes *three times* last winter because they burst from the cold. *Id.* Further, every time it rains, water seeps into the property and causes further damage. *Id.* If the property is not repaired promptly, it will sustain further damage and plaintiff will not have enough money to repair it. *Id.*

6. Lastly, plaintiff only has seven months left to use her insurance funds. KP Aff., ¶ 21. Her insurance policy requires that any repairs to the property be made within 24 months of the damage. *Id.* Seventeen months have passed and defendants have refused to release the funds for repair. *Id.* She will not be able to repair her property without the insurance checks, because she cannot afford it. *Id.*

7. On April 25, 2014, plaintiff's counsel, Al Hofeld Jr., relayed the above information to defendants' counsel, Kevin Fee of Sidley Austin LLP. *See* Email from Al Hofeld Jr. to Kevin Fee at pg. 5, appended hereto as <u>Exhibit 2</u>. Mr. Hofeld asked Mr. Fee if they could come to an agreement regarding the repairs. *Id.* Mr. Hofeld suggested that the parties escrow the funds so that defendants could oversee the repairs and protect their collateral interest in the property. *Id.* Further, Mr. Hofeld made it clear that, while plaintiff had already secured a contractor, she was willing to allow defendants to approve the contractor (or designate another contractor) before repairs began. *Id.*

8. Mr. Fee admitted that plaintiff had previously made this request, and he stated that defendants required additional documentation before they could release the funds. *Id.* Soon thereafter, plaintiff provided the requested documents through her attorney. *Id.* at 4. However, in response, defendants categorically refused to approve the repairs: "Chase agrees that it would make sense to get these checks cashed and deposited, and that an escrow makes sense here. Given the delinquency of Ms. Parker's loan, Chase is not currently prepared to authorize release of the funds or oversee repairs at this time." *Id.* at 2-3.

9. This response was unethical, illegal and an effort to squeeze Ms. Parker financially to abandon the property. In the event of loss, the underlying mortgage on the property states: "any insurance proceeds, whether or not the underlying insurance was required by Lender, **shall be applied** to the restoration or repair of the property, if the restoration or repair is economically feasible and the Lender's security is not lessened." Mortgage, ¶ 5, a true and accurate copy appended to KP Aff. as <u>Exhibit 1A</u>. The mortgage terms only allow for the insurance proceeds to be applied to the underlying balance if "restoration or repair is not economically feasible or Lender's security would be lessened." *Id.* However, defendants have *categorically refused* to disburse the insurance proceeds *simply because the loan is delinquent.* Defendants refuse to make a determination regarding the feasibility of the repairs—even though plaintiff has invited defendant to approve a contractor for repairs. <u>Exhibit 2</u>, pg. 5. Further, the repairs will *increase*, not lessen, defendants' security interest, because they would make the property habitable and rentable. KP Aff., ¶ 23. Defendants refuse to release the funds for repair in an effort to starve plaintiff out and wear her down. *Id.* at ¶ 20.

4

WHEREFORE, plaintiff respectfully requests that the Court enter an Order: (1) granting status on ruling of the Plaintiff's pending motions; and (2) any other or further relief that the Court deems just.

Respectfully Submitted,

/s/ Al Hofeld Jr.

Al Hofeld, Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
and The Social Justice Project, Inc.,
1525 East 53rd Street, Suite 832
Chicago, Illinois 60615
(773) 241-5844
(773) 241-5845 (FAX)
www.al@alhofeldlaw.com